UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
Josef Bildirici,

                        Appellant,

against                                              07 Cir 8799 (CM)(THK)

David R. Kittay,

                        Appellee.
----------------------------------------------------------x

**APPELLANT'S BRIEF IN SUPPORT OF APPEAL**

**Mark A. Frankel**
**BACKENROTH FRANKEL & KRINSKY, LLP**
**489 Fifth Avenue**
**New York, New York  10017**

**Telephone:    (212) 593-1100**
**Facsimile:    (212) 644-0544**

**ATTORNEYS FOR THE APPELLANT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................................ ii

BASIS OF APPELLATE JURISDICTION................................................. 1

STATEMENT OF ISSUE ON APPEAL AND
APPLICABLE STANDARD OF REVIEW................................................ 1

STATEMENT OF FACTS........................................................................ 1

      Background................................................................................ 2

      Trustee's Settlement with the Lender.................................... 8

      Trustee's Settlement with the Landlord............................... 10

ARGUMENT............................................................................................ 27

      Probability of Success in the Litigation............................... 28

      The complexity of the litigation involved, and the expense, inconvenience
      and delay necessarily attending it......................................... 29

      The paramount interest of creditors and a proper deference to their reasonable
      views........................................................................................... 31

      The nature and breadth of releases to be issued as a result of the settlement ..... 31

      Whether the proposed settlement is supported by an adequate record ............... 32

CONCLUSION......................................................................................... 34

# TABLE OF AUTHORITIES

## Cases

*In re Best Products*, 148 B.R. 413 (Bankr. S.D.N.Y. 1992)...............................................   6

*In re Child World,* 161 B.R. 349, 354 (Bankr. S.D.N.Y. 1993).........................................   13

*In re Crown Books* 269 B.R. 12 (Bankr. Del. 2001)...........................................................   6

*In re Nicfur Cruz* 50 B.R. 162 (Bankr. S.D.N.Y. 1985).....................................................   6, 19

*In re Lane Poultry of Carolina, Inc.* 63 B.R. 745 (Bankr..M.D.N.C.,1986).....................   16

*In re Loews* 2002 WL 535479 (S.D.N.Y.).........................................................................   6

*In re Red Dot Scenic, Inc.*, 313 B.R. 181, 184 (Bankr. S.D.N.Y.,2004)...........................   21

*In re Remsen Partners, Ltd.* 294 B.R. 557, 565 (Bankr. S.D.N.Y.,2002).........................   27

In re Reorganized Lake Diamond Associates, LLC ___ B.R. ___, 2007 WL 1109251
(Bankr..M.D.Fla. 2007)........................................................................................................   16

*In re Smoots*, 230 B.R. 140, 144 (Bankr.D.Minn.1996)....................................................   16

ii

## **Statutes and Rules**

11 U.S.C. 502(d)...................................................................................................   21

28 U.S.C. 158(a)(1)..............................................................................................   1

Bankruptcy Rule 8013...........................................................................................   1

CPLR §§ 5518 and 5519.......................................................................................   4

Title 22 of the Official Compilations of Codes, Rules and Regulations
of the State of New York, Part 1215.....................................................................   17

iii

**BASIS OF APPELLATE JURISDICTION**

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. 158(a)(1) as an appeal from a final order of the United States Bankruptcy Court for the Southern District of New York.

**STATEMENT OF ISSUE ON APPEAL AND APPLICABLE STANDARD OF REVIEW**

The issue on appeal is whether the Bankruptcy Court erred in its order granting the motion ("Settlement Motion") made by David R. Kittay (the "Trustee"), as Chapter 11 Trustee for East 44th Realty, LLC. (the "Debtor"), for approval of the settlement agreement (the "Settlement") entered into by and among the Trustee, New York Community Bank (the "Lender") and East Forty-Fourth Street, L.L.C (the "Landlord"). Issues of law may be reviewed de novo. The standard of review for findings of fact is the "clearly erroneous" standard, as set forth in Fed. R. Bank. P. 8013.

**STATEMENT OF FACTS**

**Background**

1

1.      On or about December 4, 2002, the Debtor purchased an assignment of the lease (the "Lease") by and between the Debtor and the Landlord for the building located at 228-238 East 44th Street, New York, New York (the "Building") for approximately $20 million.  Approximately $13 million of the purchase price was financed by the Lender, and approximately $7 million was contributed by the Debtor's equity holders, including Mr. Bilidirici.  Settlement Motion, p.2, Bildirici Objection, p.1. [1]

2.      On July 2, 2004, the Landlord attempted to serve the Debtor with a notice of default based on the Debtor's purported failure to complete certain unspecified repairs, and stated that the Lease would terminate if the alleged default was not cured within thirty (30) days. Settlement Motion, p.2.

3.      On July 28, 2004, therefore, the Debtor commenced the action styled *East 44th Realty, LLC v. East Forty-Fourth Street L.L.C.*, Index No. 110952/04 (Diamond, J.), in which the Debtor sought and was granted a Yellowstone injunction. The Landlord subsequently asserted counterclaims.  Settlement Motion, p.2.  At no time, however, did the Landlord specify what repairs were required to cure the default.  Bildirici Objection, p.2.

---

[1]  The Settlement Motion refers to the Trustee's July 27, 2007 Settlement Motion herein, and the Bildirici Objection refers to Bildirici's August 6, 2007 objection to the Settlement Motion.

4.      The parties' motions were decided by the trial court by order dated February 26, 2005.  Among other things, the trial court held that the Debtor was responsible for the repairs at issue, but neither specified the scope of the work ostensibly required, nor did the trial court order the Landlord to do so.  Settlement Motion, p.2.  The trial court also vacated the Yellowstone injunction and failed to provide the Debtor with any time to make the repairs, which would in all events require more than the four days remaining in the cure period to complete.  On March 10, 2005, the Landlord purported to serve a notice of termination of the Lease as of March 31.  The Debtor served its notice of appeal of the lower court order on March 18, 2005.  Settlement Motion, p.4.  On May 6, after the trial court denied a motion for a preliminary injunction reinstating the Yellowstone injunction, the Debtor made an emergency application to the Appellate Division for a stay pending appeal pursuant to CPLR §§ 5518 and 5519.  An interim stay was granted on May 6, and on May 26, the Appellate Division granted the Debtor's motion for a stay pending appeal, thereby staying the effect of the purported termination notice.  Settlement Motion, p.5, Bildirici Objection, p. 2-3.

5.      Pursuant to the Appellate Division's stay order, the Debtor to paid the Landlord $350,000.  The Landlord has never provided any documentary accounting for the application of the $350,000 in stay funds.  Bildirici Objection, p. 3.

6.      The Debtor filed its Chapter 11 petition before the Appellate Division stay pending appeal expired.  The Bankruptcy Court subsequently entered a lift stay order to permit the appeal to proceed to decision, but not to enforcement. Bildirici Objection, p. 3.

3

7.      Ultimately, the Appellate Division issued a decision holding that the Debtor was required to make certain repairs.  The repairs in question involved cosmetic brickwork to smooth out a non-structural cosmetic bulge on the Building's facade, which appears to have been extant since the Building was constructed.  The Landlord had obtained an engineer's report indicating the repairs would cost no more than $60,000.  The Debtor made the repairs at a cost of about $15,000.  Settlement Motion, p.5, Bildirici Objection, p. 3.

8.      In the meantime, the Landlord objected to the Debtor's use of cash collateral and made a separate motion in the Bankruptcy Court seeking to enjoin the Debtor's use of subtenant rents, arguing that the Debtor's Lease terminated pre-petition.  The Landlord argued alternatively that if the Bankruptcy Court found that the Lease had not terminated, then there was a liquidated damages clause in the Lease that entitled the Landlord to all of the rent from the Debtor's subtenant leases to compensate the Landlord for the purported losses arising from Debtor's default with respect to the cosmetic brickwork, and that such liquidated damages had to be turned over **in addition to** the full payment of rent.  (In the context of the instant matter, the parties have referred to this latter theory as the "Space Lease Dispute.").  Settlement Motion, p.6-8, Bildirici Objection, p. 4.

9.      Shortly thereafter, the Debtor moved to assume the Lease, and, as required by section 365 of the Bankruptcy Code, to cure all lease defaults in connection therewith.  Settlement Motion, p. 8, Bildirici Objection, p. 5.

10.     The lease termination issue, however, was deemed to be a threshold issue.  In a decision read in the record on March 10, 2006, the Bankruptcy Court held that the Lease did not terminate.  The Landlord appealed.  Although the appeal was interlocutory, the District Court reached the merits and denied the interlocutory appeal for the reason that the Landlord failed to identify any flaw in the Bankruptcy Court decision. Settlement Motion, p.9.  The District Court held as follows:

> Because I find no substantial grounds for difference of opinion with the Bankruptcy Court's holding, there is no need to address whether Landlord has identified a controlling issue of law or whether an immediate appeal would materially advance the litigation.

Thus, the law of this case is that the Lease had not terminated.  Bildirici Objection, p. 4.


11.     The remaining obstacle to effectuating a "cure," therefore, was the Landlord's attorneys fees.[2]  , Bildirici Objection, p. 5.  In that regard, as part of the Bankruptcy Court's March 10, 2006 decision, the Bankruptcy Court had suggested a framework for evaluating the Landlord's attorneys fees demand, which, unfortunately, the Bankruptcy Court essentially disregarded when it came time to rule on the Trustee's instant settlement motion.

---

[2]  Although the Bankruptcy Court never ruled on the Space Lease Dispute, the Landlord never even attempted to explain how a liquidated damages clause providing for payment of **all** of the Debtor's subtenant rents for several years, **in addition to** payment of rent, could be deemed to be anything but a penalty, in the context of a default relating to a failure to correct a cosmetic flaw in the Building's brickwork.

12.      Citing to *In re Nicfur Cruz* 50 B.R. 162 (Bankr. S.D.N.Y. 1985), *In re Best Products*, 148 B.R. 413 (Bankr. S.D.N.Y. 1992), *In re Loews* 2002 WL 535479 (S.D.N.Y.) and *In re Crown Books* 269 B.R. 12 (Bankr. Del. 2001), the Bankruptcy Court suggested a three step review. "The first step is to review the actual provisions of the lease that provide for attorneys' fees . . ." The second step is to distinguish between action ". . . undertaken by the landlord to enforce rights under the lease in a manner consistent with Section 365. . .," and "fees incurred in connection with contesting the debtor's rights generally under the Bankruptcy Code, for which they're not compensable." "The third step of the analysis is to determine whether the fees were reasonable. The third step includes a number of elements, including "the amount in dispute relative to the attorneys' fees requested . . ." Bildirici Objection, p. 5-6.

13.      After the Bankruptcy Court gave this three-step framework to the parties to guide them as to their further actions, the Debtor consented to the Landlord's motion for the appointment of a trustee, and thereafter the Bankruptcy Court appointed the Trustee to take over the case. Settlement Motion, p. 10.

14.      The Trustee hired a broker to sell the Lease, and then scheduled an auction of the Lease in the Bankruptcy Court.  Settlement Motion, p. 11-12.

15.      The Trustee also entered into the Settlement with the Landlord and the Lender, which primarily involved payment of their legal fees, and also involved granting third party releases.

Both the Settlement Motion and the auction sale were heard in the Bankruptcy Court on August 8, 2007.

16.      Unfortunately, when the Bankruptcy Court heard the Settlement Motion, the Bankruptcy Court appears to have abandoned its thoughtful and reasoned March 10, 2006 three-step framework for analyzing attorneys fees claims.  Instead, the Bankruptcy Court appears to simply approved the settlement in the interests of expediency.

**The Trustee's Settlement with the Lender**

17.      With respect to the Lender, the Settlement provides for payment of 100% of the amount the Lender was claiming for principal, interest and fees, including $500,000 on account of the Lender's attorneys fees claim.  The Lender had not filed a claim in this case setting forth the amount due, and the Motion did not indicate whether the Trustee had actually reviewed the Lender's arithmetic or examined the attorneys fees.  Bildirici Objection, p. 7.  The Bankruptcy Court nonetheless approved the so-called settlement which provided for payment in full with no reduction.

18.      In addition to paying the Lender's claim in full, the Trustee has also agreed to give the Lender a third party release thereby discharging claims against the Lender by any non-Debtor party who may have a claim against the Lender arising from its loan to the Debtor.  But that is not all.

7

In addition, the Settlement requires the Debtor to pay the Lender's legal fees in the event that a claim is made by a third party.  Bildirici Objection, p. 7.

19.    No three step analysis was made.

20.    In that regard, the first step should have been to review the attorneys' fees provision in the Lender's note and mortgage.  No such analysis was disclosed by the Trustee in his motion, and none was considered by the Bankruptcy Court, except for the Trustee's conclusory allegation at the hearing that such a review had been made.  Bildirici Objection, p. 7.

21.    The second step should have been to distinguish between fees incurred as a consequence of a default under the note and mortgage, as opposed to fees incurred for more general bankruptcy issues.  No such analysis was disclosed by the Trustee in his motion, and none was considered by the Bankruptcy Court, except for the Trustee's conclusory allegation at the hearing that such a review had been made.  Bildirici Objection, p. 8.

22.    The third step should have been to analyze the reasonableness of the fees incurred under the circumstances.  No such analysis of the attorneys' fees provision was disclosed by the Trustee in his motion, and none was considered by the Bankruptcy Court, except for the Trustee's conclusory allegation at the hearing that such a review had been made.  Bildirici Objection, p. 8.

23.     Since the Trustee neglected to give any factual disclosure concerning his analysis, and since the Bankruptcy Court did not conduct its own analysis, the Bankruptcy Court had no basis upon which to conclude that payment in full to the Lender represented a reasonable "compromise."  Indeed, the concept is an oxymoron, since the Lender gave up nothing for its compromise, and instead, collected a premium in the nature of a third party releases and an indemnification.  Bildirici Objection, p. 8.

24.     Not only should the settlement with the Lender have been rejected as not even being a settlement under any definition of the work, the Bankruptcy Court should have recognized that in calling this a "settlement," the Trustee was displaying an inexplicable absence of good judgment, and a disregard for his duty to protect of the Debtor's estate.  This problem is just as apparent when reviewing the so-called settlement with the Landlord.  Bildirici Objection, p. 8.

**The Trustee's Settlement with the Landlord**

25.     Before making his motion, the Trustee first filed a notice of cure claim on behalf of the Landlord in which he stated that based upon the Trustee's review of the Landlord's books, the Landlord's legal fees were $1.7 million.  Bildirici Objection, p. 9.  The Landlord never filed any pleading or other writing setting forth a higher amount.  Nor did the Landlord dispute this amount within the time fixed by Bankruptcy Court.  Indeed, the Landlord has never filed a pleading setting forth the amount it claims was due for legal fees.

26.     Nonetheless, as with the Lender, the Settlement settles the Landlord's claim for the same $1.7 million that the Trustee earlier represented was the total amount due.  Bildirici Objection, p. 9.  Again, the very concept that this is a settlement is an oxymoron.

27.     The Trustee nonetheless asserted in his motion that the $1.7 million amount was actually a 14% reduction from a larger number.  This would not seem to be relevant, however, since the Landlord has never made a claim for more than $1.7 million.

28.     In addition, the Settlement provides for a $200,000 escrow for unspecified additional cure costs the Landlord may find.  As with the Lender, the Settlement also gives the Landlord third party releases in order to discharge claims against the Landlord by any non-Debtor party who may have a claim against the Landlord, together with an indemnity for legal fees incurred by the Landlord if a claim is made by a third party who has any relationship to the Debtor's equity holders or insiders.

29.     The District Court can take judicial notice of the fact that after the Bankruptcy Court approved the Settlement, the Landlord sued Mr. Bilidirici.  As Mr. Bilidirici argued in opposition to the Settlement, there is no reason to believe that when Mr. Bilidirici attempts to defend himself by asserting misconduct on the Landlord's part, the Landlord will not invoke his indemnity.

30. In any event, applying the Bankruptcy Court's March 10, 2006 three-step framework for reviewing attorneys fees, the first step to review the attorneys' fees provisions in the Lease.

31. The Trustee recited the Lease legal fees provisions in the Motion, but he did not analyze them critically. Nor did the Bankruptcy Court do so at the hearing of the Motion. In that regard, there are two provisions of special importance. Bildirici Objection, p. 10.

32. Paragraph "Fourteenth" relates to fees incurred in recovering possession "In the event this lease be terminated by summary proceeding, or otherwise. . ." Thus, fees caused by lease termination are recoverable, **post termination.** There is nothing in the Lease that compensates the Landlord for legal fees incurred under the **mistaken belief** that the Lease has terminated, when in fact the Lease has not terminated. Bildirici Objection, p. 11.

33. In this case, the Trustee reports that the Landlord incurred $124,597.50 in connection with the so-called "Bank Litigation." Settlement, p. 19. That litigation involved the issue of the Landlord's and the Bank's respective rights to possession upon termination of the Debtor's Lease. Since the law of this case is that the Lease did not terminate, under paragraph fourteenth, such fees are categorically not compensable, so it is extremely likely that the Trustee would succeed in avoiding payment of such amounts. Bildirici Objection, p. 11.

11

34.    There is no separate category identified in the Trustee's breakdown for the Landlord's other efforts to recover possession upon termination.  Nonetheless, the Landlord's efforts to obtain possession based upon his mistaken assertion that the Lease terminated have been unrelenting, and have permeated almost every issue in this case, including the categories identified by the Trustee as: order to show cause ($12,558.50), appeals ($341,616.75), assumption ($169,174), cash collateral ($178,886) and termination of lease ($62,541).  Settlement Motion, 18-24, Bildirici Objection, p. 11.

35.    In summary, the Motion fails to identify well in excess of $124,597.50 in time that is categorically not compensable under paragraph Fourteenth of the Lease, and $850,000 of additional time, some or all of which may also have been incurred as part of the Landlord's attempt to obtain possession under the mistaken belief that the Lease had terminated. In the context of no reduction at all in the Landlord's claim (or, at most, a $200,000 reduction as part of the Settlement), this is significant.  Bildirici Objection, p. 12.

36.    The other Lease provision concerning attorneys fees is paragraph "Thirteenth" which provides that a bankruptcy filing is a default under the leases which triggers attorneys' fees.  Such provisions have been held to be unenforceable.  As stated by the Court in *In re Child World,* 161 B.R. 349, 354 (Bankr. S.D.N.Y. 1993),

> It is clear that Service Merchandise's second ground for breach is based on the *ipso facto* clause found in paragraph 22.1 of the Lease, *see supra* note 2, and is unenforceable under the Bankruptcy Code.  *Reloeb Co. v. LTV Corp. (In re Chateaugay Corp.),* 1993 WL 159969 at 4 (S.D.N.Y. May 10, 1993) ("Section 365 abrogates the power of ipso facto clauses.   No default may occur pursuant to an ipso

> facto clause and no reliance may be placed upon an alleged default where the only
> cause for default is the debtor's commencement of a bankruptcy case."); *In re Texaco
> Inc.,* 73 B.R. 960, 965 (Bankr.S.D.N.Y.1987).   Consequently, this Court finds no
> breach of the Lease due to Child World's filing a Chapter 11 petition.   Service
> Merchandise may only recover attorneys' fees with respect to its collection of rents,
> maintenance and taxes under the Lease.

Thus, as will be itemized below in step two, the fees incurred relating to bankruptcy matters are not

collectible.  Bildirici Objection, p. 10.  Those fees would naturally overlap much of the $850,000

described in the preceding paragraph, as well as the fees identified in step two of the Bankruptcy

Court's three-step analysis.

          37.     In that regard, the second step is to distinguish between fees incurred as a

consequence of a default under the note and mortgage which would be compensable under the Lease,

as opposed to fees incurred for more general bankruptcy issues which would not compensable under

the Lease.

          38.     In that regard, subject to review under step 1 above and step 3 below, the

following are the only categories set forth in the Settlement Motion that would appear to be even

arguably compensable as being non-bankruptcy related litigation: (a) Appeals ($341,616.75), (b)

Inspection/Engineering report ($4,925.25), (c) Insurance ($91,169.25), (d) Landlord Tenant Services

($17,978.05), (e) Security deposit ($4,650), and (f) Termination of Lease ($62,541).  In total,

potentially compensable services total $522,880.

39.     By the same token, the following categories would appear to be probably not compensable under the Lease, as arising solely under the Bankruptcy Code: Assumption ($169,174.75), Bankruptcy ($176,928), Cash Collateral ($178,886), Conversion ($16,157.75), Discovery 2006 and 2007 ($90,453.25), Order to Show Cause ($12,558.50), Sale ($70,105), Settlement 2006 and 2007 ($25,915.25), and Trustee ($83,391.75).  These categories total $823,571.  Settlement Motion, 18-24, Bildirici Objection, p. 12.

40.     In summary, After accounting for the $124,597.50 of Bank Litigation fees that are categorically not compensable under the Lease, $522,880 of time that appears to fall under potentially compensable categories as non-bankruptcy time, and the $823,571 of time  appears to fall under non-compensable bankruptcy categories.  Settlement Motion, 18-24, Bildirici Objection, p. 12.

41.     That leaves $497,447 of $1.7 million of legal time unaccounted for by the Trustee and the Bankruptcy Court.  The Trustee categorized the unaccounted $421,020 of this time as "Miscellaneous," and the Trustee acknowledged in footnote 9 of the Motion that he could not even find the remaining $76,427 of time in the Landlord's attorneys' time sheets.  Bildirici Objection, p. 13.

42.     Given Mr. Tofel's various roles in this case as attorney, property manager, and client of Weil Gotshal & Manges, the Bankruptcy Court noted in its March 10, 2006 decision that the parties should be sensitive to services performed as property manager/client as opposed to services performed as attorney.  Bilidirici respectfully submits that if the Trustee could either not find the time in

14

the time sheets, or could not categorize it into any legal category, the time is probably subject to being

expunged.  Settlement Motion, 18-24, Bildirici Objection, p. 13.


43.    In any event, after completing steps one and two of the suggested analysis

herein, it appears that no more than $522,880 is subject to review under step three.  Even that amount,

however, includes $341,616.75 of time for the appellate work which is not compensable because it

was incurred in the Landlord's losing appeal to the District Court.  As noted in Step one above, that

time is not compensable because it was incurred under the mistaken belief that the lease had terminated.

Bildirici Objection, p. 13.


44.    Once again, referring to step 3 of the Bankruptcy Court's framework, in

general, a creditor seeking fees from a debtor is only entitled to reasonable fees.  Citing, *inter alia,*

*Nicfur Cruz,* it has been held, therefore, that a good starting point for determining the reasonableness

of attorney's fees claimed by a creditor as part of its claim, is what the creditor would have spent if the

creditor were paying attorney's fees and costs itself, rather than having the ability to pass fees and costs

on to debtor.  *In re Reorganized Lake Diamond Associates, LLC* ___ B.R. ___, 2007 WL 1109251

(Bankr..M.D.Fla. 2007), *citing In re Smoots,* 230 B.R. 140, 144 (Bankr.D.Minn.1996).  Bildirici

Objection, p. 13-14.


45.    Accordingly, it is necessary to review the fee agreement between the creditor

and its attorney.  And where there is no fee agreement between the creditor and its attorney, there is no

basis to award any fees to the creditor whatsoever. *In re Lane Poultry of Carolina, Inc.* 63 B.R.

745 (Bankr..M.D.N.C.,1986).  Bildirici Objection, p. 13-14.


46.    In New York State, all fee agreements in circumstances such as apply here

must be in writing. *See, Part 1215 to Title 22 of the Official Compilations of Codes,  Rules and*

*Regulations of the State of New York.*  Accordingly, before the Trustee was appointed, and

discovery terminated in this case, the Debtor was able to begin Mr. Tofel's deposition ("Tofel

Transcript").  One of the first questions the Debtor asked, was whether there is a retainer agreement

between the Tofel firm and the Landlord.  On page 48 of the Tofel Transcript, lines 19-22, Mr. Tofel

testified that he was unaware of any written retainer agreement, as follows:

Q:    Does your law firm have a retainer agreement with the LLC?

A:    I don't believe so.  But I don't know.

Bildirici Objection, p. 14.


47.    Rather, on page 51, lines 7-11, Mr. Tofel represented that he sends a bill, and

he gets paid:

Q:    What is the arrangement with the LLC for the payment of legal fees to the
payment of Tofel & Partners?

A:    I don't understand your question.  The LLC is billed and it pays its bills.

Bildirici Objection, p. 15.


16

48.    When pressed further on page 71, lines 1 to 16, as to who he sends the bill to,

Mr. Tofel admitted that he sends the bill to himself:

Q:   Do you know whether or not any or all of those invoices were actually sent to the
client?
. . .

A:   Every invoice that has been issued by the firm was issued to the Landlord.

Q:   Who were they sent to?

A:    You mean do I - - are asking me if I mailed them to the client as we've described
that?

A:   Yes, I'm asking you if you mailed them to anybody other than yourself?

A:   No.

Bildirici Objection, p. 15.

49.    As managing agent, Mr. Tofel testified on page 78, lines 4 through 15, that he

alone reviews his invoices for the Landlord, and decides whether the Landlord should pay:

A:   With the available cash that we have I look at bills, I pay them.  If there's a
problem with them I raise the problem, I raise the issue, I get the problem resolved.
Once the problem is resolved the bill is paid, if we have cash.  If we don't, it doesn't
until we have cash.

Q:   And you make a decision as to which bills get paid and which don't?

A: Yes.

Q:   Do you consult with the LLC in making those determinations?

A:   No.

Bildirici Objection, p. 15-16.

17

50.     When pressed as to whether the client even gets copies of the invoices, Mr.

Tofel admitted further at pages 71-73 that the invoices literally do not leave his office. They travel no

further than from his desk to his file cabinet. Bildirici Objection, p. 16.


51.     Based upon the foregoing, Mr. Bildirici respectfully submits that the

Bankruptcy Court should have denied the Trustee's settlement to the extent that it provided for no

reduction from the face amount of the Landlord's claim, let alone, any reduction based upon the

absence of a retainer agreement and any evidence of an arms length relationship between attorney and

client that would have indicated that the fees were reasonable as between attorney and Landlord.

Bildirici Objection, p. 16.


52.     As between Landlord and Debtor, to the extent fees are chargeable against the

estate, the *Nicfur-Cruz* Court held as follows:

> The requirement of Code § 506(b) that fees be "reasonable" imposes a limitation on the
> amount of contractually agreed upon attorneys' fees which may properly be awarded
> by the bankruptcy court in addition to any limitation or consideration that would be
> placed under state law. This reasonableness requirement mandates that the bankruptcy
> court consider, among other things, both the policies, purposes and provisions of the
> Bankruptcy Code. . .

18

It is inherently unreasonable to ask a debtor to reimburse attorneys' fees incurred by a creditor that are not <u>cost-justified</u> either <u>by the economics of the situation or necessary to preservation of the creditor's interest in light of the legal issues involved.</u> (emphasis added)

<u>Id.</u> at 167.

53.    Applying these factors, the <u>Nicfur-Cruz</u> Court denied all legal fees expended for services that "were not reasonably required to protect the Weinstein Mortgage or its value," and then further reduced the amount sought after "giving due regard to the actual hours expended, the hourly rates sought, the legal issues pursued, the difficulties encountered, the amounts in issue, and the results achieved." Id. at 174.

54.    In this case, the Landlord conceded that the total cost of the repairs that triggered the Landlord's termination notice and subsequent litigation was no more than approximately $60,000, and the only work left to be completed (and which was the subject of the State Court litigation) was approximately $15,000 of cosmetic facade work. Bildirici Objection, p. 17.

55.    Thus, at all relevant times, the Landlord was aware of the limited cost of the work necessary, and the fact that the work would serve cosmetic purposes only. In fact the Appellate Division ruled against the Landlord on this issue as well. At the time the Debtor moved in the Appellate Division for a stay pending appeal, the Landlord cross-moved for a $1 million bond to cover the cost of the disputed repairs. The Appellate Division <u>denied</u> the Landlord's cross-motion, implicitly finding that

19

there was no evidence that the subject repairs were necessary for health or safety purposes.  Bildirici

Objection, p. 17-18

56.    In short, the time spent by the Landlord's lawyers bears no rationale

relationship to the cosmetic repair issue.  For this additional reason, the fees are subject to serious

reduction.  Indeed, there was no reason to instigate a lease termination in the first place over non

material cosmetic flaws, let alone litigate with no brakes over a trivial issue.

57.    The Bankruptcy Court however, improperly followed the Trustee's lead, and

performed no critical analysis.  Notwithstanding the Bankruptcy Court's identification of the necessary

third step of the three step of the three step analysis, neither the Trustee nor the Bankruptcy Court

deemed it relevant to adjust the legal fees based upon the Court's earlier observation that this entire

case arose in very large part from the Landlord's overreaching.  Indeed, the Landlord attempted to

obtain a forfeiture of the Debtor's Lease based upon a completely unnecessary demand that the Debtor

cure a non-material non-structural small cosmetic flaw in the exterior brickwork, that had existed since

the building was constructed.  Bildirici Objection, p. 18.

58.    Nor was Bankruptcy Court approval of the settlement informed by disclosure

of the amounts that the Landlord had already paid to counsel **in addition to** the amounts being

approved under the Settlement.  There has been no disclosure of amounts Landlord's counsel paid

himself as lawyer.  Bildirici Objection, p. 19.

20

59.    In addition, there are additional facts not considered by the Trustee or the Bankruptcy Court, which would, at a minimum, constitute a large setoff against the Landlord's attorneys' fees.

60.    Significantly, the Landlord has never responded to the facts establishing that the Debtor is entitled to approximately $113,000 as of late 2004, for overcharges for New York City water bills – by the Landlord's own report to the Debtor.  And untold additional amounts that have accrued since December 2004.  Rather, the Landlord tellingly asserted that since the Debtor was forced to file an adversary proceeding to recover the overcharges, the Landlord does not have to return the overcharges until a judgment is entered.  Bildirici Objection, p. 19.

61.    Section 502(d) of the Bankruptcy Code protects a debtor against such unreasonable conduct.  Specifically, 502(d) of the Code provides that a creditor is not entitled to assert a claim against a debtor's estate until such creditor returns amounts that are recoverable under the avoidance provisions of Chapter 5 of the Bankruptcy Code.  As the Bankruptcy Court has observed,

> As noted by Collier, section 502(d) of the Bankruptcy Code does not even necessarily require the entry of a judgment, let alone the failure to enforce one, for a claim to be disallowed: "To assure the effectuation of the purpose of this section, a claim may be disallowed at least temporarily and for certain purposes, subject to reconsideration, simply upon the allegation of an avoidable transfer. But to prevent abuse of this section this initial disallowance should be made by judicial determination, whether it be obtained in a claim objection or by some form of declaratory judgment action."
> (Citations Omitted)

21

*In re Red Dot Scenic, Inc.*, 313 B.R. 181, 184 (Bankr. S.D.N.Y.,2004).  Bildirici Objection, p. 19-20.

62.    In any event, with regard to the overcharges, the Debtor pays the Landlord a monthly amount to be held in escrow, and from the escrow, the Landlord pays water and sewer charges.  Since December 4, 2002, the Debtor has been making monthly payments to the Landlord in escrow in the nature of additional rent for real estate tax, water and sewer charges to compensate the Landlord for the amounts that the Landlord was required to remit to the City of New York for those charges.  Bildirici Objection, p. 20.

63.    The Debtor has reviewed the NYC Water Board's website which lists the amounts that the Landlord actually remitted to the City.  As set forth in the Debtor's earlier application in this case for an examination under Rule 2004, the Debtor's review of the website indicates that the Landlord overcharged the Debtor both pre-petition, and while under this Court's jurisdiction.  By the Landlord's own statement to the Debtor, the amount paid by the Debtor exceeded the amount that the Landlord paid to the City by $112,693.49 as of December 28, 2004.  To the best of the Debtor's knowledge, the overpayments have not abated, and the Debtor's escrow account maintained by the Landlord should contain several hundred thousand dollars.   Bildirici Objection, p. 20.

64.    Subsequent to the filing of this case, by letter dated October 17, 2005 to the Landllord's managing agent, the Debtor requested an accounting of the monies held by the Landlord in escrow under the Lease and/or overpaid by the Debtor to the Landlord.   Bildirici Objection, p. 21.

65.    By letter dated October 19, 2005, the Landlord denied the Debtor's request claiming, inter alia, that they "note a respectful disagreement that the debtor retains any interest in any funds once remitted to the Landlord."  By letter dated October 24, 2005, the Debtor: (a) once again requested accountings; (b) explained that the Landlord must account for any asset that the Debtor may have had an interest in as of the date of the bankruptcy filing; (c) requested the express Lease provisions giving rise to the tax escrow rights asserted in the Managing Agent's letter of October 19, 2005.  The October 24, 2005 letter also provided the Debtor's accounting of the overpayments from December 2002 to date.   Bildirici Objection, p. 21.

66.    By letter dated October 27, 2005, the Landlord again denied the Debtor's request claiming inter alia that "the lease is devoid of any provision that obligates our client to provide an 'accounting' of any payment made to it (including any one or more components of Additional Rent, in whole or in part)" but would consider same if the Debtor agreed to reimburse the Landlord for the Landlord's expenses.   Bildirici Objection, p. 21.

67.    In summary, the Landlord appears to have overcharged the Debtor for large amounts that are not due, both pre-petition and post-petition, in direct violation of New York law and

the Bankruptcy Code, to the prejudice of the Debtor's bankruptcy estate.  The Bankruptcy Court

approval of the Settlement, however, does not take into account the Landlord's failure to account for

the escrow overpayments for water sewer charges.   Bildirici Objection, p. 21-22.


68.      Nor is there any serious consideration given to the Landlord's failure to account

for $350,000 turned over to the Landlord as part of the Appellate Division stay.   Bildirici Objection, p.

22.


69.      On both of these issues, the Bankruptcy Court substituted conclusory

allegations at the hearing for factual representations.


70.      Lastly, by prior stipulation dated July 13 2007, the Debtor already paid

$20,000 of fees to the Landlord for his insurance litigation expenses.   Bildirici Objection, p. 22.


71.      The Landlord's attorneys fees issue is not the only reason the Bankruptcy

Court should have rejected the Settlement.  Indeed, the Bankruptcy Court grossly inflated the estate's

legal exposure to the Landlord.   Bildirici Objection, p. 22.


72.      As noted above, and as the Trustee himself noted, there is very little exposure

on the Space Lease Dispute, because the provision is an obvious unenforceable penalty provision.

Settlement Motion, p. 22-23.  Accordingly, the Bankruptcy Court should have denied the Trustee's

application to agree to the Landlord's demands, based upon a frivolous potential objection that the Landlord could make to the sale of the Lease.   Bildirici Objection, p. 22.

73.    Similarly, there was very little exposure on the lease termination issues because, as shown above, contrary to the Trustee's understanding, the District Court did not merely deny the Landlord's interlocutory appeal for procedural reasons.  The District Court ruled that the interlocutory appeal should be dismissed because the Landlord had failed to identify any mistake made by the Bankruptcy Court.  Accordingly, it is extremely unlikely that any further appeal would be successful. And in any event, in the absence of a stay pending appeal, a closing with the Purchaser would have mooted any such appeal.   Bildirici Objection, p. 23.

74.    For all of these reasons, Mr. Bildirici submits that it is probable that the Trustee would obtain a far better result by litigating against the Lender and the Landlord than by entering into the Settlement, and, therefore, the Bankruptcy Court should not have approved the Settlement.

75.    The determination of attorneys fees should not require a long litigation.  The Court has already reviewed the Landlord's time sheets for a portion of the period, researched the law and described a suggested a three-step framework for the analysis of the issues.  Once the Landlord is compelled to comply with the discovery demands, depositions can be completed and a trial, if necessary, can be completed in very short order.   Bildirici Objection, p. 23-24.

76.    With respect to the lease termination issue, contrary to the Trustee's understanding of the District Court opinion, the District Court has already adopted the Bankruptcy Court's decision.  Admittedly, the Landlord can subsequently appeal to the Second Circuit, but it will need to obtain stay.  Otherwise a closing of the Trustee's sale of the Lease will likely moot any appeal under section 363(n) of the Code.  Bildirici Objection, p. 24.

77.    Similarly, the Space Rent Dispute borders on being frivolous given the outlandish amounts demanded as liquidated damages for a non-material lease violation.

78.    At a minimum, some additional litigation may force the Lender and the Landlord to recognize that additional compromises should be made to obtain a result that could arguably be deemed to be reasonable.  In short, the amount in dispute in this case is so large that relative to the costs of litigation, the estate would likely benefit from additional litigation of the issues.   Bildirici Objection, p. 24.

79.    Based upon the foregoing, Mr. Bilidirici submits that the record in this case indicates a desperate desire to settle for settlement's sake, without regard to the facts, the law, or the consequences to equity security holders.

## **ARGUMENT**

26

80.    In *In re Remsen Partners, Ltd.* 294 B.R. 557, 565 (Bankr. S.D.N.Y.,2002),

the Bankruptcy stated as follows concerning a motion to approve as settlement:

> Guided by the factors listed in *TMT Trailer Ferry,* 390 U.S. at 424, 88 S.Ct. 1157, the courts
> have identified several factors to be considered when evaluating whether a proposed settlement
> is within the reasonable range of litigation possibilities and in the best interest of the estate and
> creditors:  (a) the probability of success in the litigation, (b) the difficulties, if any, to be
> encountered in the matter of collection, (c) the complexity of the litigation involved, and the
> expense, inconvenience and delay necessarily attending it, and (d) the paramount interest of
> creditors and a proper deference to their reasonable views.  *In re Jackson Brewing Co.,* 624
> F.2d 605, 607 (5th Cir.1980);  *In re Carla Leather,* 44 B.R. 457, 466
> (Bankr.S.D.N.Y.1984).  Other potentially relevant factors include (e) the competency and
> experience of the trustee and trustee's counsel (although their recommendation alone is not
> dispositive), (f) the nature and breadth of releases to be issued as a result of the settlement, (g)
> the extent to which the settlement is not the product of fraud or collusion, *In re Mrs.
> Weinberg's Kosher Foods,* 278 B.R. at 362 (listing each factor), and (h) whether the
> proposed settlement is supported by an adequate record.  *In re Lion Capital,* 49 B.R. 163,
> 176 (Bankr.S.D.N.Y.1985).

81.    As will be shown below, the Bankruptcy Court abused its discretion in deciding

that the Settlement fell within the lowest level of reasonableness when applying the factors relevant to

this case.

**The probability of success in the litigation**

82.    The Bankruptcy Court underestimated the Trustee's likelihood of success on

the merits in a litigation.  In connection therewith, the Bankruptcy Court had no basis to deny the

following objections interposed by Mr. Bildirici:

(1)    The Trustee agreed to pay more than 100% of the amounts due, by agreeing both to payment in full and third party discharges and indemnities in favor of both the Landlord and the Lender.

(2)    The Lease does not allow for claims based upon a mistaken belief that the Lease had terminated.

(3)    The Lease does not provide for payment of certain bankruptcy-related litigation fees, and with respect to with respect to the Lender, the Trustee did not even explain exactly what the loan documents say in that regard.

(4)    The fee arrangement between Landlord and Landlord's counsel was not an arms length relationship.

(6)    The amounts at stake relative to the fees the Landlord incurred support a large reduction of whatever fees may have been otherwise legitimately due.

(7)    The Landlord did not disclose the amount of fees previously paid, in addition to fees paid under the Settlement.

(8)    The Landlord did not account for the $350,000 paid pursuant to Appellate Division order.

(9)    The Landlord appears to have misappropriated escrow funds.

(10)    The risk of reversal of the Bankruptcy Court's and District Court's prior holdings that the Lease had not terminated pre-petition was nominal.

(11)    The risk of the Landlord's success on the Space Lease Dispute was nominal.

(13)    The Trustee failed to defer to the views of equity security holders.

(14)    The Trustee failed to examine whether third party releases would be allowed under the Bankruptcy Code in the circumstances of this case.

(15)    The Trustee Failed to examine the implications for plan confirmation of the indemnities granted to the Lender and the Landlord.

28

83.     Given all of the above mistakes made in applying the law to the facts of this

case, Bildirici respectfully submits that the Bankruptcy Court abused its discretion by finding that the

Settlement did not fall below the lowest level of reasonableness.


**The complexity of the litigation involved, and the expense, inconvenience and delay
necessarily attending it**


84.     The Bankruptcy Court gave too much weight to the benefits to be obtained by

avoiding litigation.


85.     As to the potential objections to the sale of the Lease that could have been

made by the Landlord's and the Lender in the absence of the Settlement, the record reflects that neither

filed an objection, and, therefore, neither preserved their right to make an objection.


86.     The Landlord's potential appeal of the sale based upon the argument that the

Lease had terminated did not expose the Debtor's estate to serious risk because: (a) the law of the

case, as written by the District Court, is that there was no legal or factual basis for such an appeal, and

(b) any such appeal would be mooted by the closing of the sale.


87.     The Space Lease Dispute was based upon the Landlord's bizarre attempt to

enforce a Lease provision that arguably may have provided for the Landlord to pocket 100% of the

rents the Debtor collected from the Debtor's tenants, **in addition to** payment in full of the rent the Debtor owed the Landlord under the Lease.  There is nothing in New York law that would ever permit the enforcement of such a provision, and thus, the Bankruptcy Court gave too much weight to resolution of that purported dispute as well.

88.     The only real dispute that existed, as the Bankruptcy Court had been noting since at least March 2006, was the amount of attorneys fees that should be awarded to the Landlord. With regard to that, the Bankruptcy Court routinely rules on contested fee applications in much less than a single day.

89.     Accordingly, based upon the very nominal advantage to be gained by precluding litigation that would have occurred in the absence of Bankruptcy Court approval of the Settlement, it was an abuse of discretion for the Bankruptcy Court to find that the settlement did not fall below the lowest level of reasonableness.

**The paramount interest of creditors and a proper deference to their reasonable views**

90.     In this case, the Trustee demonstrated at the hearing of the Motion that the sale proceeds, together with the Trustee's cash on hand, would pay all creditors in full.  Accordingly, the only parties negatively affected by the Settlement were the equity security holders, including Mr. Bilidirici.

30

91.     The Bankruptcy Court, however, did not give any deference to the reasonable views of equity security holders. In other words, had the Settlement not been approved, the only parties at risk of loss were the equity security holders, so the equity security holders should have been able to determine their own fate, and to litigate the issues the Bankruptcy Court improperly resolved.

92.     For this additional reason, it was an abuse of the discretion for the Bankruptcy Court to find that the Settlement did not fall below the lowest level of reasonablenes.

**The nature and breadth of releases to be issued as a result of the settlement**

93.     There was not even the pretense of consideration for the releases and indemnifications given to the Lender and the Landlord.

94.     It was especially unfair to give such a release to the Landlord, because the Landlord made no secret of the fact that he intended to sue Mr. Bildirici. The release, therefore, facilitated such litigation, and is likely to spawn even more litigation.

**Whether the proposed settlement is supported by an adequate record**

95.     The inadequacies in the record, included, but are not limited to the following:

31

(1)    failure to examine the Lender's claims before agreeing to payment in full with a complimentary third party discharge and indemnity,

(2)    failure to analyze the Lease provision limitation on attorneys fees for lease termination issues,

(3)    failure to analyze the denial of fees in Bankruptcy arising from ipso facto termination clauses,

(4)    failure to distinguish the Landlord's attorneys fees demand between compensable non-Bankruptcy related legal services, and non-compensable Bankruptcy related legal services,

(5)    failure to analyze fee arrangement between Landlord and Landlord's counsel, including the presence or absence of a retainer agreement, and whether there is an arms length relationship,

(6)    failure to review the record of this case in light of the amounts at stake relative to the fees incurred,

(7)    failure to determine total fees paid to Landlord's attorneys, in addition to fees demanded for cure purposes,

(8)    failure to obtain an accounting for the $350,000 paid pursuant to Appellate Division order,

(9)    failure to obtain an accounting for escrow funds maintained by the Landlord on the Debtor's behalf,

(10)   failure to examine the District Court decision regarding the absence of any basis to find that the Lease had not terminated,

(11)   failure to examine the frivolity of the Space Lease Dispute,

(12)   failure to examine the consequences of the Settlement for unsecured creditors,

(13)   failure to examine consequences of the Settlement for equity,

(14)   failure to examine whether third party releases would be allowed under the Bankruptcy Code in the circumstances of this case, and

(15)   Failure to examine the implications for plan confirmation of the indemnities granted to the Lender and the Landlord.

## <u>CONCLUSION</u>

WHEREFORE, the Debtor respectfully requests that the District Court reverse the

Bankruptcy Court, and that the Court grant such other, further and different relief as this Court may

deem just and proper.


Dated:        New York, New York
              October 29, 2007


                          BACKENROTH FRANKEL & KRINKSY,
                    LLP, Attorneys for the Debtor


                    By:    s/Mark A. Frankel_____
                           Mark A. Frankel (MAF-8417)
                           489 Fifth Avenue
                           New York, New York  10017
                           (212) 593-1100


- 33 -